JEREMIAH LOONIE and others *v.* ROBERT HOGAN. (*a*)

Under an agreement, by the terms of which F. and W. were to erect upon a lot of ground then owned by H., a building of a certain kind and description, H. agreeing to advance to F. and W. the sum of $1,300, towards the erection of the building, upon the enclosure of which H. was to convey the lot to F. and W for the sum of $1,700, and take from them, simultaneously with the delivery of the deed, a bond and mortgage, to secure the said $1,700; *held,* that H. was not the owner of the building within the meaning of the " act for the better security of mechanics erecting buildings in the city of New York." (Laws of 1830, p. 412.)

The case of *McDermott* v. *Palmer*, 11 Barb. S. C. R., 9, holding the contrary doctrine, overruled.

IN THE COURT OF APPEALS, APRIL, 1854.

THIS was an appeal from the general term of the New York Common Pleas, affirming the judgment of the special term, dismissing the complaint of the plaintiffs and granting judgment in favor of the defendants, in an action brought under the provisions of the " act for the better security of mechanics," &c., passed April 20, 1830, as amended April 13, 1832, to recover the value of certain work performed and materials furnished by the plaintiffs, and used in the erection of a house on the northerly side of Eleventh street, in the city of New York, alleged to be the property of the defendant.

. It appears, that on the 19th of July, 1849, an agreement was entered into between Robert Hogan, the defendant, of the one part, and Peter J. Flinn and James Mullaney, of the other part, whereby it was mutually agreed that Hogan should sell to Flinn and Mullaney the lot upon which this house was afterwards built, for $1,700; that Flinn and Mullaney should forthwith erect upon the said lot a four story building, twenty-five feet wide and fifty feet in depth, similar

(*a*) See note *a, ante,* p. 675.

in all respects to a certain building in Twelfth street, owned and erected by Gleeson and Harman, which said building, it was mutually agreed, should be the pattern house; that Hogan, to aid in the erection of said house, should loan and advance to said parties, at certain times therein specified, $1,300, and that when the said house was enclosed, he should deliver said parties a warrantee deed for the said lot. It was further agreed, that simultaneously with the delivery of the deed, said Flinn and Mullaney should execute and deliver to the said Hogan their bond, secured by a mortgage on the premises for the said purchase money, and also for the several sums loaned and advanced or to be advanced thereon by him.

It was further mutually agreed, that if Flinn and Mullaney should refuse or neglect to complete the said intended house, or if the diligent prosecution of the work thereon should at any time, after the date of the contract, be suspended for ten days, then, and in such case, said Hogan should have the right to insist on the payment of all advances he had made, and to sell, at public or private sale, all the right, title, interest and estate of the said Flinn and Mullaney in and to the said premises, and to apply the proceeds to the payment of all sums due or to become due on or on account of said premises, rendering the surplus, if any, to Flinn and Mullaney, Hogan to give to Flinn and Mullaney one week's notice of his intention to sell.

Flinn and Mullaney began to build under that contract in about fourteen days after the date thereof. On the 11th August, 1849, the plaintiffs agreed with Mullaney to furnish certain cut stone, for the said house, for the sum of two hundred dollars, payable weekly, in proportion to the quantity of stone delivered. They furnished and put up $150 worth of the said stone, and in September, Mullaney gave them an order on Hogan, the defendant, for $150, for stone delivered to him in Eleventh street. On the 1st October, 1849, Hogan, in the presence of Loonie, one of the plaintiffs, asked Mullaney if he would give an order on him in favor

of the plaintiffs, to be paid from time to time, in instalments, as the payments should become due, for the stone furnished by them, and if so, he would accept it. Mullaney said he would. Loonie was satisfied with that, and Hogan told Loonie that at any time during the day, when he would come up with it, he (Hogan) would accept it. Mullaney on that day signed and delivered the order to Loonie, according to agreement. Mullaney saw Hogan afterwards, and he said he would not accept it. The service of the written account of the plaintiffs, duly verified, on or about the 3d day of October, 1849, is admitted by the pleadings. Hogan afterwards paid several sums of money to Flinn and Mullaney, under the contract, and on the 1st day of April, 1850, he executed and delivered a full covenant deed of the said premises to Peter J. Flinn.

*Thomas Darlington* and *L. S. Scott*, for the appellants, made and argued the following points:

I. Hogan's contract with Flinn and Mullaney was a building contract. He thereby agreed with them, that they should forthwith erect on his lot in Eleventh street, a four story brick house, agreeably to a certain plan and specification, (the pattern house,) and that he would pay them $1,300 to aid in the erection thereof, *in instalments as the work progressed;* and reserved to himself the right, in case the diligent prosecution of the work thereon, at any time thereafter, should be suspended ten days, to insist on the immediate payment of all his advances, and to sell, at public or private sale, all their right, title, interest and estate in said premises, and to apply the proceeds of such sale to the payment of all sums due or to become due on, or on account of the said premises.

II. Hogan continued to be the owner of the premises, notwithstanding the building contract contained an agreement to sell the said lot to Flinn and Mullaney, when enclosed. (11 Barbour's S. C. Rep. p. 9; 5 Metcalf's Rep. p. 78; 6

Cushing's Rep. p. 58; 14 Pickering's Rep. 49; 1 Selden's Rep. p. 151; 6 Hill's S. C. Rep. p. 525; 6 Johns. Ch. Rep. 223; Story on Eq. Juris. §§ 714, 716, 749 to 751–790.)

III. The word "owner," as contained in the lien law, (Laws of 1830, p. 412, and 1832, p. 181,) embraces every person in interest who, by contract with "the builder, or other person" erecting the house, shall be obligated to provide the whole or any part of the building fund.

IV. Hogan, being the owner of the lot, and by his contract having agreed to furnish $1,300 for the erection of the house in instalments, as the work progressed, and payments to Flinn and Mullaney having subsequently accrued under his contract with them, is liable for work and materials done and furnished towards its erection, to that extent, in the same way and equally as he would have been, had not the contract contained any terms of sale.

V. Flinn and Mullaney's order on the defendant to pay the plaintiffs $150 for the stone work, was an *equitable* assignment of so much of the funds agreed to be paid to them by the defendant for the erection of the house, and therefore it was not necessary that it should be accepted in writing—nor indeed that it should be accepted at all. (*Morton* v. *Naylor*, 1 Hill, 583, and cases there cited; 4 Simons' Rep. p. 607.)

VI. Hogan's promise to accept and pay the order to be drawn by Flinn and Mullaney on him for $150, was a promise to pay money due from him to them, direct to the plaintiffs, in lieu of paying it to Flinn and Mullaney, and was therefore binding. (*Barker* v. *Backlin*, 2 Denio, 45.)

The judgment of the special term ought to be reversed, and a new trial ordered, with costs to abide the event.

*John B. Dillon*, for the respondent, *contra.*

I. The agreement set forth in the bill of exceptions is not a contract for the building of a house, but a contract for the sale of a lot: "The said Flinn and Mullaney agree and covenant to purchase, and do hereby purchase the above

described lot," &c.   Such a contract is not within the scope of the lien law.

II. Mullaney testifies that he was building a house for *himself* on said lot, and the language of the proposal addressed by the plaintiffs ·to Mullaney, shows that they regarded him as owner, and treated with him as such.

III. The subsequent delivery of a warranty deed to Peter J. Flinn, is no proof of ownership in the defendant, because the deed was made in fulfillment of the previous contract. Mullaney had assigned his interest in the contract.

IV. Even if Hogan were the owner of the house, he would not be liable under the old lien law, unless it appeared that there were payments to be made to his contractor *subsequent to the service* of an attested account upon him.   (2 R. S. p. 648, § 13, 3d ed.)   No evidence of any such payment is presented in this case; on the contrary, Mullaney states that nothing was paid to him after the order was given to plaintiff, that is, after the 1st or 2d of October, whereas, the attested account bears date October 3d, and was served on the defendant "on or about the third day of October." Therefore, no payment was made (nor is it proved that any money became due) to the contractor, (supposing Mullaney to be such,) after the service of the attested account on the defendant.   Therefore, the defendant is not liable under the section of the lien law above referred to.

V. The promise to accept Mullaney's draft is void, because—

1st. There was no consideration, the work having been all .completed at the time the promise is said to have been made. By the complaint it appears that the work was done, &c., " up to, and on or about the 8th day of September."   The date of the alleged promise was on or about the 2d day of October.

2d. There was no written undertaking signed by the defendant.

3d. There is no evidence that the order or draft was ever presented to the defendant for acceptance, while he had any fund belonging to Mullaney in his hands.

4th. The order does not designate any particular fund out of which it was to be paid.

5th. Even though it did, it does not appear that, (at the date of the order, or ever afterwards,) there was any fund belonging to Mullaney in the hands of the defendant. The contrary may be presumed from Mullaney's statement, that " nothing was paid to him after the order was given to plaintiff," and also from the fact that the defendant, Hogan, shortly afterwards *advanced* to Mullaney three hundred dollars, *not due under the contract.*

For the above reasons. it is submitted, respectfully, that the judgment of the New York Court of Common Pleas should be affirmed, with costs.

DENIO, J.—The act entitled " an act for the better security of mechanics and others erecting buildings in the city and county of New York," provides that every mechanic doing any work towards the construction of any building in the city of New York, erected under a contract, in writing, between the owner and builder, or other person, "may deliver to the owner of the building an attested account of such labor, and thereupon such owner shall retain, out of his subsequent payments to the contractor, the amount of such work and labor, for the benefit of the person so performing the same." (Statute of 1830, p. 412, § 31.)

The subsequent section of the act provides for the adjustment of the account between the contractor and the party who rendered it, when it shall be disputed, which is to be brought about by arbitration, if the parties cannot agree; and when the amount due shall have been determined, if the contractor shall not pay it in ten days, "the owner shall pay the same out of the fund as above provided, and which amount due may be recovered from the said owner by the creditor of the said contractor, in an action for money had and received, to the use of said creditor, and to the extent in value of any balance due by the owner to his contractor under the contract with him, at the time of the notice first

given aforesaid, or subsequently accruing to such contractor under the same, if such amount shall be less than the sum due from the said contractor to his creditor. (§ 4.) " If, by collusion or otherwise, the owner of the building shall pay the contractor in advance of the times of payment mentioned in the contract, and there shall not be enough left to pay the party who shall have served the account, the owner shall, notwithstanding, be liable to the party, as though such payments in advance had not been made." (§ 5.)

This is the whole of the act; and the question in this case is, whether the relation between the defendant, of one part, and Mullaney and Flinn of the other, is that of owner and contractor for building, within the true construction of the statute. Assuming that the contract for the sale of the lot was entered into in good faith, and without any view to evade the provisions of the lien law, it certainly presents a different case from the one which was primarily in the contemplation of the legislature.

The object of the law was to enable a laborer, mechanic or sub-contractor to attach, in effect, in the hands of the person for whom the building was erected, the debt which the latter might owe to the immediate contractor on his contract for the work. As no lien attached to real estate, the title to the lot is not a matter of any importance, and the question would be the same, so far as I can perceive, if one should agree to lend money to the owner of a lot to enable him to build a house thereon, with an agreement to secure the loan by mortgage, when the building should be completed. It would not be seriously contended, in such a case, that a mechanic or laborer, employed by the borrower, could proceed under this act to reach the money agreed to be loaned. The remedy which the statute gives, is against money due to the principal contractor for the work which he agreed to do, but which the sub-contractor or mechanic has actually performed for him. It does not extend to money payable to the contractor on any other account. It is quite reasonable that the party meritoriously entitled to be paid for the work,

should be allowed to intervene between the owner for whom the house was built, and the person who has contracted to build t, and to divert the course of the payments which would have passed into the hands of such contractor to his own. It is a form of equitable subrogation, regulated by statute; but it is limited by the act to the plain case of money due upon contract for performing the work. The case is equally without the letter of the statute, if it is the "owner of the building" against whom the remedy is given. In this case, although the title of the lot remained in the defendant, Mullaney and Flinn were erecting the building for themselves, and not for the defendant. They, and not the defendant, were to own it when it should be completed. The money which the plaintiffs seek to obtain, is money agreed to be loaned, and not a debt agreed to be paid. It is only the latter to which the statute refers. If public policy or the just interests of laborers and mechanics require that the remedy should be extended so as to embrace the case of money agreed to be advanced otherwise than by a party contracting to have a building erected for himself, it is for the legislature to provide for such cases by new enactments.

I am aware that the Supreme Court of the city of New York has arrived at a different conclusion in a similar case; but, with every disposition to concur in opinion with so respectable a tribunal, I find myself unable to assent to the judgment in that case. (*McDermott* v. *Palmer*, 11 Barb. S. C. R. 9.)

I see no reason to doubt but that the parties to the contract for the sale of the lot intended, in good faith, to make the precise bargain contained in it. It is not an unreasonable, nor, I believe, an unusual arrangement for the owner of town lots to connect with a contract to sell them, an agreement to loan money to the purchaser, to be expended in building upon them, taking a lien upon the real estate, to secure both the purchase price and the money loaned.

There is no ground for holding the defendant liable on the draft. Considering what was said between the parties as an

agreement to accept, it is unavailable for two reasons : *first*, it was not in writing; (1 R. S. 768, §§ 67–8 ;) and *second*, the plaintiffs were to present the bill to the defendant on the same day on which the conversation was had, and it was only on that condition that the defendant agreed to accept. It does not appear to have been presented at all.   There was no promise to pay for this work, except what was said about accepting the bill.   The ruling in the court below was therefore correct, and the judgment ought to be affirmed.

Judgment of the Court of Common Pleas affirmed.